DAVID ASHKENAZY *vs.* R. M. BRADLEY & CO., INC. (and a companion case[1]).

Suffolk.    December 3, 1951. — January 7, 1952.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*Contract,* For sale of real estate, Performance and breach. *Deed,* Acknowledgment, Date, By corporation, Validity. *Notary Public. Mortgage,* Of real estate: discharge.

The provision of G. L. (Ter. Ed.) c. 183, § 30 (b), requiring a certificate of authority applies only in the case of an acknowledgment before "any other officer."

An acknowledgment of a deed in another State before a notary public who affixes his notarial seal to his certificate of acknowledgment on the deed is sufficient under G. L. (Ter. Ed.) c. 183, § 30 (b), without a certificate of his authority.

A mortgage discharge with a date, the same as its date of recording, later than the date of its acknowledgment justified a finding from its face that it had been executed prior to its acknowledgment and revealed no invalidity.

[1] The companion case is by the same plaintiff against Commonwealth-Newbury Mortgage and Real Estate Trust.

No want of "a good and clear record . . . title" as required by a contract for sale of real estate appeared through a recorded mortgage discharge purporting to have been executed in behalf of a bank by one as its president where a recorded by-law of the bank authorized the treasurer or president to discharge mortgages, although an amendment of the by-law making no material change therein was in effect but not recorded at the time of such discharge and the names of the treasurer and the president were not recorded.

One seeking to recover a deposit made as buyer under a contract for sale of real estate was not entitled to rely on an alleged failure of performance by the seller at the time for performance in tendering an unacknowledged deed and in not then having with him a discharge of an outstanding mortgage, where the buyer already had unjustifiably repudiated the contract.

The buyer under a contract for sale of real estate providing that a deposit made by him should be held by a broker "as earnest for the proper performance of" the contract by the buyer and should be duly accounted for at the time of passing papers, and that if the buyer should fail to perform the deposit might be retained by the seller as liquidated damages, was not harmed by the broker's turning over the deposit to the seller before the time of passing papers where it appeared that the buyer unjustifiably repudiated the contract.

Two ACTIONS OF CONTRACT. Writs in the Superior Court dated January 23, 1948, and January 24, 1948, respectively.

The plaintiff alleged exceptions saved at a hearing by *Kirk*, J., without jury.

*I. M. Libman*, for the plaintiff.

*J. M. Graham*, for the defendants.

WILKINS, J. These two actions, one against the broker and the other against the seller, are to recover a deposit made by the plaintiff under a written contract to purchase an apartment house at 290 Commonwealth Avenue, Boston. The judge found for each defendant.

The contract, under date of June 20, 1947, called for the delivery of the deed by the seller, Commonwealth-Newbury Mortgage and Real Estate Trust, to the plaintiff at 10 A.M. on November 1, 1947, at the Suffolk registry of deeds, unless otherwise agreed. The selling price was $75,000, $10,000 of which was paid by the plaintiff to the broker when the contract was signed, and the balance was to be paid upon delivery of the deed. Other material provisions were: "Said premises are to be conveyed by a good and

sufficient quitclaim deed running to the buyer . . . and shall convey a good and clear record and marketable title to such property, free from encumbrances . . . . To enable the seller to make conveyance . . . he may, if he so desires, at the time of the delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests; all instruments so procured to be recorded simultaneously with the delivery of said deed. . . . If the seller shall be unable to give title or to make conveyance . . . the seller agrees to use reasonable efforts to remove any defect in title . . . and the time for the performance hereof shall be extended thirty days. In case at the expiration of the extended time the seller shall have used reasonable efforts and shall have failed so to remove . . . any payment made under this agreement shall be .forthwith refunded and all other obligations of all parties hereto shall cease and this agreement shall be void without recourse to either party. . . . If the buyer shall fail to fulfill his part of the agreement, all payments made hereunder by the buyer may, at the option of the seller, be retained by the seller as liquidated damages. . . . The deposit made by the buyer . . . is to be held by R. M. Bradley & Co. Inc. as earnest for the proper performance of this agreement on the part of the buyer, and is to be duly accounted for at the time of delivery of the deed."

The facts appear from the findings of the judge. Shortly after the agreement was signed the plaintiff became convinced that he had made a bad bargain, and resolved that if he could legally avoid carrying out the agreement he would do so. On July 29, 1947, the plaintiff authorized the broker to sell the premises for $77,500 provided a purchaser was found by August 31 to assume the plaintiff's obligations under the agreement. When the broker brought this to the attention of one Farrell, the managing trustee of the seller, the latter instructed him to send the seller the $10,000 deposit, and he did. The plaintiff did not learn of this until December 5. In the meantime the plaintiff's attorney had the title examined, and shortly before

November 1 in a telephone conversation arranged with Farrell to meet in the registry on November 3, saying that the plaintiff would not take title because his examination disclosed that the seller could not give a good and clear record title, and that he would cite the particular defects when they should meet.

At the meeting on November 3 at the registry the attorney for the plaintiff informed Farrell that the record title was defective in three respects, of which two are still relied upon: (1) A grantor in the chain of title had made an acknowledgment before a notary public in the State of Wisconsin, but there was appended no certificate of the notary's authority by the Secretary of State or a clerk of a court of record of that State. (2) A discharge of a mortgage bore a date subsequent to the acknowledgment of the discharge before a notary public. Farrell asked the plaintiff's attorney if he would accept the deed if a certificate was obtained from Wisconsin. The latter replied that he would not accept the deed unless and until all defects were cleared up. Farrell stated that he did not understand the objections, and that he did not think they were seriously raised. He thereupon tendered an unacknowledged quitclaim deed executed by the seller, and offered to make his acknowledgment as a seller, before the plaintiff's attorney, who examined the deed and rejected it. Nothing was said about meeting again in thirty days.

On December 1, 1947, the attorney for the plaintiff appeared at the registry, and unsuccessfully had the seller and Farrell paged. On December 3 the plaintiff wrote the broker that defects in title were apparent on November 1; and that no one appeared for the seller on December 1, before which time defects were to be corrected. He demanded refund of the $10,000. The broker replied that the deposit had been turned over to the seller at its request. The seller advised the plaintiff that the deposit was being retained as liquidated damages.

"A good and clear record title free from all incumbrances means a title which on the record itself can be again sold

as free from obvious defects, and substantial doubts."
*O'Meara* v. *Gleason*, 246 Mass. 136, 138. *Oliver* v. *Poulos*,
312 Mass. 188, 192. With this in mind we turn to the
several objections to the title adduced by the plaintiff.

1. The first objection made at the registry by the plain-
tiff's attorney concerns a deed by Robert E. N. Dodge to
Arthur M. Wyman, dated November 30, 1923, recorded
in the Suffolk registry of deeds. The judge stated as a
fact that the deed was acknowledged before a notary public
in the State of Wisconsin who affixed his notarial seal.
There was not, however, subjoined or affixed a certificate
of authority of the notary attested by the Secretary of
State or by the clerk of a court of record in Wisconsin.
The judge ruled that "such a subjoined certificate of au-
thority is not required by G. L. (Ter. Ed.) c. 183, § 30 (b),
when read in the light of Pub. Sts. c. 120, § 6, and St. 1894,
c. 253, and St. 1895, c. 460."

This ruling was right. General Laws (Ter. Ed.) c. 183,
§ 30, reads: "The acknowledgment of a deed or other
written instrument required to be acknowledged shall be
by one or more of the grantors or by the attorney executing
it. The officer before whom the acknowledgment is made
shall endorse upon or annex to the instrument a certificate
thereof. Such acknowledgment may be made — (a) If
within the commonwealth, before a justice of the peace
or notary public. (b) If without the commonwealth, in
any state, territory, district or dependency of the United
States, before a justice of the peace, notary public, magis-
trate or commissioner appointed therefor by the governor
of this commonwealth, or, if a certificate of authority in
the form prescribed by section thirty-three is attached
thereto, before any other officer therein authorized to take
acknowledgments of deeds."

This statute makes clear, by the word "or," that the re-
quirement of a certificate of authority applies only to the
last class of magistrate described, "any other officer . . .
authorized to take acknowledgments of deeds." Such was
the plain meaning of Pub. Sts. c. 120, § 6. Before the pas-

sage of St. 1894, c. 253, it was not necessary to append to the acknowledgment a certificate that the person taking it was a justice of the peace. Some doubt created by St. 1894, c. 253, § 3, was removed by St. 1895, c. 460, § 1, which provided that nothing in St. 1894, c. 253, should prevent the acknowledgment of conveyances in the form and manner lawfully used before the passage of the act. *Close* v. *Martin*, 208 Mass. 236, 240. The same procedure was preserved in R. L. c. 127, § 23. There is no reasonable ground for argument that G. L. c. 183, § 42, in effect when the deed in question was executed, was intended to reinstate the confused situation which apparently existed after the passage of St. 1894, c. 253, and before the passage of St. 1895, c. 460. *Carter* v. *Burgess*, 323 Mass. 295, 300–301. *Waltham* v. *Mignosa*, 327 Mass. 250, 253. See 35 Mass. Law Q. November, 1950, No. 4, page 61.

2. The second objection made by the plaintiff at the registry of deeds is that a discharge of a mortgage is dated December 31, 1926, whereas the acknowledgments of the mortgagees are of an earlier date. That of Theodora Dodge bears the date November 29, 1926, and the certificate of authority of the notary is November 30, 1926, while that of Robert E. N. Dodge is dated November 23, 1926, and the certificate of authority of the notary bears the date December 11, 1926. The date of record in the registry is December 31, 1926.

The judge found "from the entire instrument" that the dates of the acknowledgments were correct, and that the discharge had been executed prior thereto. Again there was no error. The date of a deed is prima facie evidence of the date of its delivery. *Smith* v. *Porter*, 10 Gray, 66, 68. *Conley* v. *Finn*, 171 Mass. 70, 73. *Hall* v. *Sears*, 210 Mass. 185, 187. This evidence may be controlled or overcome by other recitals in the deed or by extrinsic facts and circumstances. *Dresel* v. *Jordan*, 104 Mass. 407, 417. *Lexington* v. *Ryder*, 296 Mass. 566, 568. In *Dresel* v. *Jordan*, *supra*, there was a bill in equity for the specific performance of a contract to buy land, "a clear and satisfactory title to be

given." A deed in the chain of title was dated September 12, 1866, but the certificate of acknowledgment bore date, of September 5, 1866, and attested that the grantor acknowledged the deed on that day. The date of recording was September 12, 1866.[1] Specific performance was decreed, the court saying, at page 417, "The objection to the inconsistency between the date of the deed from Cabot to Higginson, and the date of the certificate of acknowledgment, is not sufficient to justify a refusal to take a conveyance of the property. A date is not essential to the instrument of conveyance. It takes effect from delivery. If a date be written in the deed, it is not conclusive, but may be controlled by other recitals in the deed, or by extrinsic facts or circumstances. . . . The certificate of acknowledgment is presumed to be correct, and will not be controlled by the date inserted in the deed. Even if that date was inserted subsequently, and indicates the true time of delivery of the deed, the discrepancy does not render the deed invalid. The real date of a deed is the time of its delivery; which may be subsequent to its acknowledgment, and even after registration." See *Mighill* v. *Rowley*, 224 Mass. 586, 587. The quoted language is based on the face of the deed, and is conclusive in the case at bar. It, accordingly, is no ground of distinction that the contract in the *Jordan* case did not require a "good and clear record title."

3. Another point now relied upon by the plaintiff is that a mortgage dated September 20, 1928, to the Institution for Savings in Roxbury and its Vicinity was not properly discharged. The discharge reads, "In witness whereof the said Institution for Savings in Roxbury and its Vicinity has caused its corporate seal to be hereto affixed and these presents to be signed, acknowledged and delivered in its name and behalf by Albert E. Gladwin its President this twenty-ninth day of November A. D. 1946. Institution for Savings in Roxbury and its Vicinity, Albert E. Gladwin

---

[1] This is from the original papers, which also show a second recording on July 8, 1869.

President." Then follow the seal of the bank and Gladwin's acknowledgment as president on behalf of the bank. There was recorded in the registry on July 20, 1893, a by-law of the bank authorizing the treasurer or president to discharge mortgages. But no record was made of an amendment in effect when the discharge was executed and, for present purposes, in substance the same as the recorded by-law. Neither were the names of the treasurer and president recorded in the registry. No defect in the record title here appears.

4. Various arguments based upon the tender of an unacknowledged deed at the time set for conveyance and the failure to have prepared a discharge of an outstanding mortgage are of no avail to the plaintiff. The judge warrantably found that there had already been a repudiation of the agreement by the plaintiff. *Schilling* v. *Levin, ante,* 2, 5.

5. In the suit against the broker, the plaintiff contends that there was a breach of the agreement in that the broker did not hold the deposit until the time set for the delivery of the deed. The judge found that the plaintiff was not damaged by turning the deposit over to the seller. This conclusion was right wholly without reference to the effect of the subsequent arrangement whereby the plaintiff undertook to resell the premises at an advanced price through the same broker.

6. We have considered all the arguments of the plaintiff. The opinion is fully as long as the merits of the two actions justify. All questions raised by the plaintiff's requests for rulings have been covered. No useful purpose would be achieved by specific discussion of them. In each case the entry must be

*Exceptions overruled.*