NORMAN SWARTZ *vs.* HARRY SHER.

Suffolk.    May 8, 1962. — June 29, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Contract,* For sale of real estate.   *Trust,* Real estate trust.   *Words,* "Record title."

One seeking to recover a deposit made by him as buyer under a contract for sale and purchase of real estate requiring conveyance of "a good and clear record and marketable title" had the burden of proving that the defendant seller's title was not good beyond a reasonable doubt. [639]

Discussion of business trusts having transferable shares.   [639-642]

In an action by the buyer against the seller under a contract for sale and purchase of a parcel of land requiring conveyance of "a good and clear record and marketable title," where it appeared that in the chain of title there was a deed by the trustees of a real estate trust having record title to the parcel and full power to convey it under their recorded declaration of trust, the plaintiff was not entitled to recover his deposit by reason of the mere facts that the declaration of trust provided for transferable shares of beneficial interest and that it did not appear of record that any such shares had ever been issued.   [642]

Swartz v. Sher.

CONTRACT. Writ in the Municipal Court of the City of Boston dated May 17, 1960.

There was a finding for the plaintiff by *Roberts, J.* The Appellate Division ordered a report dismissed, and the defendant appealed.

*Fred Ross* for the defendant.

*Louis Showstack,* for the plaintiff, submitted a brief.

CUTTER, J. This is an action of contract, brought in the Municipal Court of the City of Boston, to recover a $500 deposit under an agreement for the sale of land in Sharon. The vendor (Sher) was to convey to the buyer (Swartz) "a good and clear record and marketable title." When the agreement was made, the real estate stood in the name of one Jacobson who "acquired the premises . . . [by] deed dated June 30, 1958, from George L. Harwood and Edward M. Anderson, [t]rustees under a [d]eclaration of [t]rust known as the Harwood Realty Trust." The declaration of trust was recorded in the Norfolk County registry of deeds on October 24, 1956. The Harwood trust "was a so-called Massachusetts [t]rust with transferable shares." The trust declaration "contained no mention . . . of the fact that shares . . . had, in fact, been issued" and there was no instrument on record on November 6, 1959 (when papers were to have passed), showing any such issue of shares.

The buyer's counsel advised his client "that in his opinion title to the premises . . . was not a good and clear record and marketable title." It was stipulated that tender of a deed would be waived, "it being understood that the sole question is whether there is a good and clear record and marketable title with respect to the . . . Harwood . . . [t]rust." A lawyer, qualified as an expert, testified that, in his opinion (see *Luce* v. *Parsons,* 192 Mass. 8, 12–13; *Mishara* v. *Albion,* 341 Mass. 652, 657), "there was not a good and clear record and marketable title." The trust declaration was in evidence and provided that the "beneficial interest in the trust fund . . . shall consist of an authorized capital of $4,000 . . . divided into forty . . . shares, each representing a par value of one hundred dol-

lars . . . to be paid in . . . property, services, expenses, or cash. The trustees shall issue a certificate [in a specified form] . . . to each person who has a beneficial interest . . . stating the number of shares held by such person." The trustees had "full power . . . to sell . . . and convey . . . any part . . . of . . . [the] trust fund upon such terms . . . as they see fit."

The trial judge, because there was no evidence of the issue of trust shares on record at the registry of deeds, denied the vendor's requests for rulings set out in the margin.[1]

The court concluded that "the title . . . was not a good and clear record and marketable title" and found for the buyer in the sum of $500. The case was reported to the Appellate Division on the issue of the denial of the vendor's requests for rulings. The Appellate Division dismissed the report.

1. "A good and clear record title . . . means a title which on the record itself can be again sold as free from obvious defects, and substantial doubts." *O'Meara* v. *Gleason,* 246 Mass. 136, 138. *Oliver* v. *Poulos,* 312 Mass. 188, 192–193. *Ashkenazy* v. *R. M. Bradley & Co. Inc.* 328 Mass. 242, 245–246. *Tramontozzi* v. *D'Amicis, ante,* 514, 516–517. See Swaim, Crocker's Notes on Common Forms (7th ed.) §§ 838–839. Cf. *Morse* v. *Stober,* 233 Mass. 223, 226; *Cleval* v. *Sullivan,* 258 Mass. 348, 351; *Sullivan* v. *F. E. Atteaux & Co. Inc.* 284 Mass. 515, 520.

That the title shown on the records permits the existence of a "mere possibility" of a defect in title will not relieve a purchaser from liability under his contract. *Oliver* v. *Poulos,* 312 Mass. 188, 192–193. See *Ryder* v. *Garden Es-*

---

[1] "6. Failure of the . . . Harwood . . . [t]rust to state that beneficial interest shares had in fact been issued does not affect the validity of the . . . [t]rust as a legal entity where shares had, in fact, been issued. 7. Failure of the . . . [t]rust . . . to state that beneficial interest shares had in fact been issued does not render a conveyance by the [t]rustees . . . defective or inoperative where shares had, in fact, been issued prior to such conveyance. 8. Since beneficial interest shares in . . . [the] [t]rust had, in fact, been issued prior to the conveyance in issue [that of June 30, 1958, to Jacobson], said conveyance did effectively transfer the interest of the trust in the realty which it purported to convey."

*tates, Inc.* 329 Mass. 10, 12; *Mishara* v. *Albion,* 341 Mass. 652, 654–655 (marketable title to be conveyed). See also *First African Methodist Episcopal Soc.* v. *Brown,* 147 Mass. 296, 298–299. Frequently, it would be impracticable to place on the records all the material which would incontrovertibly answer all the peripheral or insubstantial doubts which conveyancers might entertain, or which might be advanced to make it unnecessary for a reluctant purchaser to proceed with his agreement to buy.

2. The question whether the vendor's title was clear was one of fact with the burden upon the buyer to prove that the vendor's title was not good beyond a reasonable doubt. See *Mishara* v. *Albion,* 341 Mass. 652, 654–656. For reasons stated below, there was no evidence of any circumstance of record which required the vendor to place upon the record additional evidence of his title.

3. Trusts with transferable shares have been submitted to substantial statutory regulation (see G. L. c. 182) in many respects similar to the regulation of corporations. To be sure such trusts are not corporations, nor are they entities apart from the trustees. See *Peterson* v. *Hopson,* 306 Mass. 597, 612–613; *State Tax Commn.* v. *Colbert, ante,* 494, 497. Nevertheless, this type of business organization (see *State St. Trust Co.* v. *Hall,* 311 Mass. 299, 301– 311) in practical effect is in many respects similar to a corporation. See *Bomeisler* v. *M. Jacobson & Sons Trust,* 118 F. 2d 261, 265 (1st Cir.); Bogert, Trusts and Trustees, §§ 293–310; annotation, 156 A. L. R. 22. See also Powell, Real Property, §§ 137, 573; Peairs, Business Corporations, §§ 12–14 (also 28 B. U. L. Rev. 301). Cf. *Pope & Cottle Co.* v. *Fairbanks Realty Trust,* 124 F. 2d 132, 135 (1st Cir.). There is, in the interest of certainty in business transactions and of security of property interests and titles, every reason for treating such trusts in respect of affairs in which they engage (and particularly as concerns the interests of persons dealing with them for value without notice of any irregularity in their proceedings) as having the existence, capacity, status, and powers which they appear to have upon

the basis of the information which such trusts must make of record. The proceedings of such organizations should be afforded the benefit of every permissible inference or presumption of regularity. See *Moroni* v. *Brawders,* 317 Mass. 48, 52–53; *Massachusetts Charitable Mechanic Assn.* v. *Beede,* 320 Mass. 601, 611; *Hale* v. *Hale,* 332 Mass. 329, 333; Wigmore, Evidence (3d ed.) § 2534. See also McCormick, Evidence, § 309.

The Appellate Division relied primarily upon *Kaufman* v. *Federal Natl. Bank,* 287 Mass. 97, 98. See Scott, Trusts (2d ed.) § 112, at p. 808. In the *Kaufman* case (see pp. 98–99) this court considered a "real estate operating trust,". of which no "original beneficiaries" had been named and which never issued any shares. The trustee, treated as sole owner, purported to give a mortgage upon land, owned by her individually, to herself as trustee. She then, as trustee, assigned the mortgage to a bank to secure a loan. Although the court (p. 100) said that the mortgage was void, it treated the assignment (pp. 101–102) as conveying to the bank a security interest which would be good against a later purchaser of the land from the trustee as an individual. That purchaser paid value (p. 100) but had "actual knowledge of the terms of all the material recorded instruments," including the trust, the mortgage, and the mortgage assignment. This court had no occasion to consider whether the regularity of the issue of shares of such a business trust must appear of record in the registry of deeds. See Am. Law of Property, § 18.58. The decision does not apply to the present case.

It is appropriate to treat business trusts on a somewhat different basis from private trusts. See Restatement 2d: Trusts, § 1, comment b; Scott, Trusts (2d ed.) § 2.2. We assume (without deciding) that a private trust may fail for want of a beneficiary ascertainable within the period of the Rule against Perpetuities. See Restatement 2d: Trusts, § 112. When, however, a business trust instrument (which provides for transferable shares) is recorded in the registry of deeds and in the public offices

mentioned in G. L. c. 182, § 2 (as amended through St. 1948, c. 550, § 39), that trust in effect is held out to the public as an operative trust for the benefit of its then existing and future certificate holders. See also G. L. c. 203, §§ 1–3. Ordinarily the situation thus indicated by the record will be consistent with the facts, for few persons will incur the expense and trouble of executing and recording such a trust, unless it is promptly to be effective. Persons conveying property to such a trust as a contribution to its corpus or capital ordinarily will receive share certificates, or will be entitled to require the issue of appropriate share certificates to them. Persons conveying property to the trust, without consideration, will ordinarily be such contributors to its corpus, or be entitled to have the property held by the trustees upon resulting trust for them. If title to property purchased by the trustee of a business trust is taken in his name as trustee, the likelihood is that some part of the purchase price represents directly or indirectly a contribution of capital or corpus by some existing certificate holder or holders or by a person or persons entitled to require the issue of share certificates by the trustee. In case any defect in the trust in fact exists, persons having a legal or equitable interest in property held by the trustees, qua trustees, may well be estopped, in particular circumstances, to show the existence of such a defect. We do not consider whether any of these practical considerations apply in the present case. All of them, however, do indicate generally that there is sound reason for assuming the regularity of the organization and existence of a recorded business trust. They also suggest the practical inconveniences of putting persons dealing with such trusts to inquiry about their internal operations and capital structure except where there is affirmative record evidence of a defect of real substance.

The specific statutory requirements governing filing such declarations of trust and their annual reports (see G. L. c. 182, § 2, as amended through St. 1948, c. 550, § 39; and § 12, inserted by St. 1954, c. 254, § 2) provide the public

with reasonable means of obtaining information about such trusts. Recording the trust agreement in the registry of deeds places upon that record the terms of such a trust sufficiently to apprise purchasers of the trustees' powers. In the absence of a specific statutory requirement that a certificate of the issue of shares of such a trust be recorded in the registry of deeds, we think (a) that no such obligation to record exists by implication, and (b) that such recording is not essential to showing upon the record that the trust exists.

We hold that the existence of the Harwood trust was adequately shown on the record by the recorded trust instrument. There was no affirmative evidence of record that the trust did not validly exist. There was a recorded conveyance of the Sharon property on June 30, 1958, to Jacobson by the Harwood trustees, as trustees. The record showed that they then held the record title and that they possessed power to sell. The conveyance sufficiently established the transfer of record title to Jacobson. If there was in fact a defect in the existence of the trust, the burden was on the buyer, who asserted that defect, to prove the facts showing the defect. If such facts had been shown, they would not have affected the record title, but at most would have been relevant only to whether the title was marketable.

4. The vendor's requests numbered 6, 7, and 8 should have been granted.

5. The order dismissing the report is reversed. Judgment is to be entered for the defendant.

*So ordered.*