In re The CARRIAGE HOUSE, INC., James J. Gabelhart and Ruth S. Gabelhart, Mark F. Gabelhart and Martha E. Gabelhart, Debtors.

H. Arthur and Nancy S. LOUX, Plaintiffs,

v.

James J. GABELHART, Ruth S. Gabelhart, James J. Gabelhart, as Trustee of C & H Associates, First National Bank of Vermont, General Electric Capital Corporation, and The Carriage House, Inc., Defendants.

Bankruptcy Nos. 88–152, 88–175 and 88–174.

Adv. No. 89–22A.

United States Bankruptcy Court, D. Vermont.

Sept. 28, 1990.

J. Canney, III, Hull, Webber, Reis & Canney, Rutland, Vt., trustee pro se for James Gabelhart and Ruth Gabelhart Chapter 7 Bankruptcy Estate.

R. Gerety, Jr., Plante, Hanley & Gerety, P.C., White River Junction, Vt., for H. Arthur Loux and Nancy S. Loux.

J. Meyers, Jerome I. Meyers, P.C., White River Junction, Vt., for James J. Gabelhart, Ruth S. Gabelhart, and The Carriage House.

E. Zuccaro and J. Salamandra Corso, Zuccaro, Willis & Bent, St. Johnsbury, Vt., for First Nat. Bank of Vermont.

## MEMORANDUM OF DECISION ON PROPERTY OF ESTATE

FRANCIS G. CONRAD, Bankruptcy Judge.

Trustee and Gabelharts seek a determi-

nation [1] that a Declaration of Trust executed by James Gabelhart, trustee, is invalid and its property declared part of Gabelharts' personal bankruptcy estate. Trustee and Gabelharts also seek to enforce a discharge of a mortgage on the property by extending a discharge of an assignment of that mortgage to include the mortgage itself. They also seek to prevent Bank's post-petition attempt to correct this alleged defect through the application of a bona fide purchaser for value status. Bank and Loux oppose. We hold the Declaration of Trust created a valid and nonvoidable Vermont Common Law business trust, or, in the alternative, a private trust. In either case, only Gabelharts' beneficial interest becomes property of their bankruptcy estate. Because we resolve the trust issue in favor of Loux and Bank, it is not necessary to determine the mortgage discharge issue. Upon request of Trustee, we will set an evidentiary hearing for the valuation of Gabelharts' bankruptcy estate's beneficial interest in the trust.

## BACKGROUND

Loux initiated this adversary proceeding for a determination of the validity and priority of a mortgage upon certain real estate located in Windsor, Vermont. Following the filings of pleadings and cross-pleadings, Loux moved for partial summary judgment and sought: 1) a declaration on the validity and priority of its lien on the real estate; and 2) a determination that the real estate was not part of Gabelharts' personal bankruptcy estate. Bank filed a memorandum in support of Loux's motion for partial summary judgment. Gabelharts and Carriage House filed a cross motion for partial summary judgment against Loux and a joint motion for summary judg-

ment against Bank. The cross motion sought: 1) a declaration that the mortgage was discharged and unenforceable; and 2) a declaration the real estate was part of the Gabelharts' personal bankruptcy estate. The cross motion against Bank also sought damages for violation of the automatic stay.[2] On March 12, 1990, we filed our *Memorandum of Decision on Motions For Partial and Summary Judgment* and denied all pre-trial motions for partial and summary judgment because we found material and disputed facts required a trial. Trial on the merits was held and this matter was taken under advisement upon the conclusion of a post-trial briefing schedule.

## FACTS

On May 1, 1987, James Gabelhart entered into a Declaration of Trust of C & H Associates (Declaration of Trust), a so called Real Estate Investment Trust under the Internal Revenue Code (REIT).[3] James Gabelhart was named trustee for the Declaration of Trust.

The material terms of the Declaration of Trust include:

## RECITALS

.  .  .  .  .

1. The Trustees desire to form a trust for the principal purpose of purchasing commercial and other real property and raising capital therefore to be secured on the real property, and all acts associated therewith.

2. The Trustees desire that such trust qualify as a 'real estate investment trust' under the REIT Provisions of Internal Revenue Code.

.  .  .  .  .

---

**1.** We have jurisdiction to hear this matter under 28 USC § 1334(b) and the general reference to this Court by the United States District Court for the District of Vermont. This is a core matter under 28 USC § 157(b)(2), (A), (E), (K). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52 as made applicable by Rules of Practice and Procedure in Bankruptcy Rule 7052.

**2.** On May 29, 1990, Trustee filed a request for a withdrawal of its automatic stay claim and stated its lack of opposition to the entry of Bank's motion for summary judgment on this issue. We so oblige.

**3.** 26 USC §§ 856, *et seq.* At trial we ruled the Declaration of Trust did not qualify as a REIT because its "beneficial ownership" was not held by the required 100 or more persons. 26 USC § 856(a)(5).

4. The beneficial interest in the trust assets shall be divided into transferable shares of beneficial interest, evidenced by certificates therefor, as hereinafter provided.

## DECLARATION

Now therefore, the Trustees hereby declare that they will hold all property of every type and description that they may acquire as such trustees, together with the proceeds thereof, in trust, to manage and dispose of them for the benefit of the holders of record of the certificates for shares being issued and to be issued hereunder and in the manner and subject to the provisions as follows:

.　　.　　.　　.　　.

## THE TRUST

1.3 Nature of trust. The trust is a real estate investment trust (also known as a business trust, for real estate purposes) organized under the laws of the State of Vermont. The trust is not a general partnership, limited partnership, joint venture, corporation, or joint stock company. The shareholders shall be beneficiaries, and their relationship to the trustees shall be solely in that capacity in accordance with the rights conferred on them hereunder. The trust is intended to have the status of a 'real estate investment trust' as that term is defined in the REIT provisions of the Internal Revenue Code, and this declaration of trust and all actions of the trustees hereunder shall be construed in accordance with such intent.

## POWERS OF TRUSTEES

2.1. General. The trustees, subject only to the specific limitations contained in this declaration of trust, and such limitations as may be imposed by law, shall have, without other or further authorization, and free from any power or control on the part of the shareholders, full, exclusive, and absolute power, control and authority over the trust property and over the business of the trust to the same extent as if the trustees were the sole and absolute owners of the trust property and business in their own right. . . .

.　　.　　.　　.　　.

2.4 Legal title. Legal title to all the trust property shall be vested in the trustees as joint tenants and held by and transferred to the trustees, except that the trustees shall have power to cause legal title to any trust property to be held by or in the name of one or more of the trustees with suitable reference to his or their trustee status, or in the name of the trust, or in the name of any other person as nominee, on such terms, in such manner, and with such powers as the trustees may determine.

.　　.　　.　　.　　.

## INVESTMENTS

.　　.　　.　　.　　.

4.2 Limitation of liability if trust fails to qualify under the REIT provisions of the Internal Revenue Code. The general purpose of the trust is to seek real estate investment trust income as defined in the REIT provisions of the Internal Revenue Code. The trustees intend to make investments in such a manner as to comply with the requirements of the REIT ... no trustee ... shall be liable for any act or omission resulting in the loss of tax benefits under the Internal Revenue Code, except for that arising from bad faith, willful misconduct, or reckless disregard of duties or for failure to act in good faith in the reasonable belief that the action was in the best interests of the trust.

## SHARES

6.1 Description of shares. The interest of the shareholders hereunder shall be divided into shares, all of one class and having a par value of ten dollars ($10.00) per share. The number of shares authorized hereunder is unlimited. Ownership of shares shall be evidenced by certificates. All shares shall have noncumulative voting, distribution, liquidation, and other rights, and shall be fully paid and nonassessable, and shall have no preference, conversion, ex-

change, preemptive, or redemption rights.

6.2 Certificates. Every shareholder shall be entitled to receive a certificate.... [C]ertificates shall be treated as negotiable, and title thereto and to the shares represented thereby shall be transferred by delivery thereof to the same extent in all respects as a stock certificate....

### CHARACTERISTICS OF SHARES

8.1. General. The ownership of the trust property of every description and the right to conduct any business hereinbefore described are vested exclusively in the trustees, and the shareholders shall have no interest therein other than the beneficial interests conferred by their shares, and they shall have no right to call for any partition or division of any property, profits, rights, or interests of the trust nor can they be called on to share or assume any losses of the trust or suffer an assessment of any kind by virtue of their ownership shares.... Notwithstanding any other provisions hereof, all real estate at any time forming part of the trust property shall be held in trust subject to sale and conversion into personal estate at such time or times and in such manner and on such terms as the trustee shall approve, but the trustees shall have power, until the termination of this trust, to postpone such conversion so long as they shall think fit, and for the purpose of determining the nature of the interest of the shareholders therein, all such real estate shall at all times be considered as personal estate; and the real estate and personal property comprised in the trust estate shall constitute a single fund.

8.4. Trustees as shareholders. Any trustee in his individual capacity may purchase and otherwise acquire or sell and otherwise dispose of shares or other securities issued by the trust, and in so doing shall be subject to the same limitations as director of a business corporation organized under the laws of the State of Vermont.

### TRUSTEES

10.1. Number and qualifications. There shall be one (1) trustee until such time as the number of trustees has been changed pursuant to the provisions of this paragraph 10.1. The number of trustees may be increased or decreased by a written instrument signed by a majority of the trustees then in office, provided that the number of trustees shall in no event be less than one (1) or more than four (4).

### RECORDING OF DECLARATION OF TRUST

12.1. Recording. A notice of this declaration of trust and any amendment hereto shall, as soon as reasonably practicable after its execution or adoption, and when statutorily required, be filed in the office of the Commissioner of Banking and Insurance of Vermont, which filing shall be a condition precedent to effectiveness of any such amendments.... Except as to the required filing of amendments in the office of the Commissioner of Banking and Insurance of Vermont, the above mentioned filing shall not be deemed a condition to effectiveness of, and the failure to so file shall not be deemed to invalidate, any such amendment or any election or appointment of any person as a trustee or the resignation or removal of any trustee.

### AMENDMENT OR TERMINATION OF TRUST

13.1. Amendment or termination.... The trust may be terminated at any meeting of shareholders called for the purpose by the affirmative vote of the holders of not less that (sic) two thirds of the shares then outstanding and entitled to vote, or by an instrument of instruments in writing, without a meeting, signed by a majority of the trustees and the holders of not less than two thirds of such shares. Such amendment or termi-

nation shall not be effective until, if such amendment or termination is effectuated by an instrument in writing, such instrument shall have been filed in the office of the Commissioner of Banking and Insurance of Vermont or, if effectuated by a vote at a meeting, a certificate, signed and acknowledged by a trustee that such action was taken at a meeting duly called and held in accordance with and by the affirmative vote required by this declaration of trust, shall have been so filed....

## MISCELLANEOUS

14.1. Governing Law. This declaration of trust is a executed by the trustees and delivered in the State of Vermont and with reference to the laws thereof, and the rights of all parties and the validity, construction, and effect of every provision thereof shall be subject to and construed according to the laws of such state.

. . . . .

14.4. Provisions in conflict with law or regulations.

. . . . .

b. If any provision of this declaration shall be held invalid or unenforceable in any jurisdiction, such invalidity. or unenforceability shall attach only to such provision in such jurisdiction and shall not in any manner affect or render invalid or unenforceable such provision in any other jurisdiction or any other provision of this declaration of trust in any jurisdiction.

## DURATION OF TRUST

15.1. Duration. Subject to earlier termination ... the trust created hereby shall terminate the death of the last survivor of the initial shareholders and the following named persons ...:

| Name | Date of Birth | Address |
|------|------|---------|
| James Gabelhart | 10/11/25 | Quechee, Vermont 05059 |
| Ruth Gabelhart | 12/21/28 | Quechee, Vermont 05059 |

. . .

(Stipulation Exhibit # 1).

James Gabelhart testified that C & H Associates was set up on the advice of his accountant as a vehicle to handle real estate. James Gabelhart further testified that Ruth Gabelhart, his spouse, was made a beneficiary under the Declaration of Trust on August 1, 1987, and as was recited in the minutes of a meeting which James Gabelhart says was never held.

There is no evidence that shares or certificates were issued under paragraphs 6.1 and 6.2 of the Declaration of Trust. No filings, under paragraphs 12.1 or 13.1 of the Declaration of Trust, were made with Vermont's Commissioner of Banking and Insurance.

The *res* of this trust is real property conveyed by Warranty Deed (Stipulation Exhibit # 4) from Loux, grantors, to "James Gabelhart, Trustee," grantee. The real property contained the buildings and real estate upon which The Carriage House, Inc. did business. "James Gabelhart, Trustee" executed and delivered to Loux a Promissory Note (Stipulation Exhibit # 7) and a Mortgage Deed (Stipulation Exhibits # 5 and # 6) on the real property. Bank's branch manager, Carroll R. Cooley, testified that Loux, as mortgagee, executed an Assignment of [C & H Associates] Mortgage and assigned the mortgage to Bank (Stipulation Exhibits # 8 and # 9) as collateral for a separate mortgage transaction Loux had with Bank. Additionally, on the last page of the recorded Mortgage Deed, the Town Clerk penned on its margin that an assignment appears in Volume 87 at page 198, the very next page. Bank's branch manager also testified that he believed Attorney Thomas Rounds, Gabelhart's personal attorney, prepared the Assignment of Mortgage.

The Warranty Deed, Mortgage Deed, and Assignment of Mortgage were recorded in the Land Records of the Town of Windsor, Vermont on May 1, 1987. (Stipulated Exhibits # 3, # 4, # 5, # 6, # 8, and # 9). The Declaration of Trust and the Promissory Note were not recorded.

The real property that was deeded to "James Gabelhart, Trustee," and conveyed subject to the Declaration of Trust of C & H Associates, was treated on Gabelharts'

1987 and 1988 personal income tax returns, Form 1040 Schedule E, as their property. Although C & H Associates acted like a trust, *i.e.*, Carriage House mailed payments to C & H Associates and C & H Associates disbursed the mortgage payments to Loux, there are no trust tax returns or Federal Taxpayer Identification Number for C & H Associates. In fact, James Gabelhart testified he believed the Bank accepted his personal Social Security Number as C & H Associates's Federal Taxpayer Identification Number.

The Warranty Deed did not express for whom James Gabelhart, trustee, was acting as a grantee. We resolve this ambiguity by finding that James Gabelhart was acting not in his personal capacity but as trustee on behalf of C & H Associates throughout the real estate transactions, but in his individual capacity when he recorded the rental income and expenses on his Federal Form 1040, Schedule E.

After recording of the various documents, Bank added "Discharge" language to the original Assignment of Mortgage which it later attempted to rescind. As we indicated earlier, however, it is not necessary to make findings on the discharge issue due to our finding that the real property is not 11 USC § 541(a) property.

On August 1, 1988, Gabelharts filed a joint Chapter 11 petition. 11 USC §§ 101, *et seq.* C & H Associates has not filed for bankruptcy protection. Gabelharts listed the Trust's real property as their personal assets on Schedule B–1 of their petition. Carriage House also filed for Chapter 11 protection. On February 2, 1990, we entered an Order converting Gabelharts and Carriage House to cases under Chapter 7, 11 USC §§ 101, *et seq.*, and appointed their respective Chapter 7 Trustees on March 8, 1990.

## CLAIMS OF THE PARTIES

Loux seeks a determination that the real property they deeded to James Gabelhart, trustee, is not part of Gabelharts' personal bankruptcy estate. They request to proceed on their stayed State Court mortgage foreclosure proceeding against C & H Associates. Loux claims that 11 USC § 541 does not reach the real property interest in issue because the Declaration of Trust divided the ownership of the real property into legal and equitable estates, *i.e.*, James Gabelhart, but not Ruth Gabelhart, holds the legal estate as trustee for C & H Associates, while Gabelharts hold the equitable or beneficial interest as shareholders of C & H Associates.

Bank joins Loux's position. Despite the absence of Vermont statutory or judicial decisions on the subject, Bank encourages us to declare that the Declaration of Trust created a valid "Massachusetts Business Trust" or "common law trust" under Vermont's Common Law. Bank says the Declaration of Trust meets Vermont's statutory requirement that a trust involving real estate be in writing.[4] Bank concedes James Gabelhart is the only trustee and, while "lax," he fulfilled some of his duties in his capacity as trustee. Namely, he executed promissory notes and a mortgage deed, leased real property to Carriage House, accepted rental payments on behalf of C & H Associates, and paid expenses related to the property. As for the absence of the execution of certificates or shares from the business trust, Bank advances Gabelharts are entitled to require the issuance of the shares as beneficiaries under paragraph 6.2 of the Declaration of Trust, *supra*, at any time so long as there exists one of the measuring lives named in paragraph 15.1 of the Declaration of Trust, *supra*. Moreover, Bank argues that it and Loux are entitled to rely upon the representations of the Declaration of Trust and upon the actions by its trustee. Bank vehemently argues it should not be bound by evidence of unilateral nonconformance with the business trust's procedural requirements that occurred after the closing of the real estate transactions.

In contrast, Gabelharts seek a determination that the real property is part of their personal bankruptcy estate under 11 USC § 541 of the Bankruptcy Code. First, Ga-

---

**4.** 27 Vt.Stat.Ann. § 303, *infra.*

belharts claim the Declaration of Trust is not a valid business trust under Vermont Law because it failed to follow the terms mandated by the Declaration of Trust, *i.e.,* it failed to issue certificates or shares, failed to register with the Commissioner of Banking and Insurance of Vermont, and failed to add Ruth Gabelhart as a trustee. Besides the technical failure, Gabelharts directs our attention to their factual treatment of the real property as their personal asset for bankruptcy and internal revenue purposes. Second, and assuming *arguendo* we rule the Declaration of Trust created a business trust, make Ruth Gabelhart a co-trustee despite the lack of compliance with the terms of the trust, and allow the issuance of certificate of shares, Gabelharts claim the Trust terminates under the doctrine of merger because they hold both the legal and equitable estates. Ergo, they conclude, the real property is part of their personal bankruptcy estate.

Bank disputes the application of the doctrine of merger in this instance. In the event we were to make Ruth Gabelhart a co-trustee under the Declaration of Trust, Bank notes that there is a lack of a complete unity of legal and equitable title among the trustees and beneficiaries. Specifically, Bank directs our attention to paragraph 2.4 of the Declaration of Trust, *supra,* that provides the trustees are to hold legal title as joint tenants. James and Ruth Gabelhart, on the otherhand, as alleged beneficiaries under the Declaration of Trust, hold their beneficial interest as husband and wife, which, says Bank, is a tenancy by the entirety under Vermont Law.

## DISCUSSION

The central and crucial issue to be decided is whether Gabelharts' bankruptcy estate has any interest in the real property. 11 USC § 541(a)(1), **Property of the estate,** provides:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

The relevant exception to § 541(a)(1):

(b) Property of the estate does not include—

(1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor; ...

■ In the absence of a Congressionally expressed exercise to the contrary, the substantive nature of a creditor's, debtor's, and hence, a bankruptcy estate's, respective interest in property is defined by state law.

Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both State and federal courts within a state serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'

*Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136, 141–42 (1979) (*citing, Lewis v. Manufactures National Bank,* 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323, 327 (1961)). *Accord, In re Kors, Inc., (Robinson v. Howard Bank)* 819 F.2d 19, 22, 16 B.C.D. 162, 164 (2d Cir.1987); *Robinson v. U.S. Small Business Administration (In re Catamount Dyers, Inc.),* 50 B.R. 788, 789 (Bkrtcy.D.Vt.1985); *Purcell v. STN Enterprises, Inc. (In re STN Enterprises, Inc.),* 47 B.R. 315, 318 (Bkrtcy.D.Vt.1985).

■ Despite the failure of the Declaration of Trust to qualify as a REIT, the issue remains about its proper legal designation under Vermont Law, *i.e.,* is it a "business trust," "private trust," or, some other legal creature.

The Declaration of Trust at issue here is an obvious *inter vivos* agreement concerning real estate. Vermont Law requires

written proof of a declaration of trust concerning real estate:

> A trust concerning lands, excepting such as may arise or result by implication of law, shall not be created or declared, unless by an instrument in writing signed by the party creating or declaring the same, or by his attorney.

27 Vt.Stat.Ann. § 303.

The Vermont Supreme Court explained the evidentiary nature of § 303's predecessor,[5] after tracing the statute's origin to the English Statute of Frauds:[6]

> A trust concerning lands may be created and declared by the same person ... or it may be created by one person and declared by another.... The statute does not require that it be created and declared in writing, but that it be so created or declared. Nor does the statute require that the writing be formal in character. It would seem, therefore, that any instrument, which sufficiently defines the object and terms of the trust, signed by either the person who creates the trust, or the person who declares it, meets the requirements of the statute.

*Straw v. Mower,* 99 Vt. 56, 63, 130 A. 687 (1925) (held the statute's writing requirement is satisfied by a bill of complaint signed by one in the position of trustee) (emphasis in original). Accord, *Miele v. Miele,* 124 Vt. 110, 114, 197 A.2d 787 (1964).

The Declaration of Trust at issue meets Vermont's general requirement that there be written proof of a declaration of trust concerning real estate. Having crossed the basic threshold of statutory requirements, we look at the business purpose of the Trust *sub judice.*

█ Aside from the now defunct REIT purpose of the Declaration of Trust, the pertinent terms of the Declaration of Trust

declare it is a "business trust" under Vermont Law. (Stipulation Exhibit # 1).

With one exception not applicable here,[7] we are unable to find a single reported Vermont case or statute that has any discussion concerning a "business trust." The notable absence of Vermont Law on business trust does not, however, end our inquiry. The Trust at issue was created by an agreement under contract common law. Hence, it has its origin in common law.

> For many years the trust has been used in Massachusetts as a form of business organization, a substitute for incorporation, and in the years following the First World War the device came widely to be used elsewhere.... Such organizations are usually referred to as "business trusts" or "Massachusetts trusts" although the term "common law trust" is also frequently used, emphasizing the fact that the organization is one formed without the aid of statute.

Bogert, *The Law of Trusts and Trustees,* § 247, pages 145–146 (1977) (footnotes omitted). *See also,* 12A C.J.S., *Business Trust,* § 3, page 496 (1980); 13 AmJur2d, *Business Trusts,* §§ 1, 2, pages 377–378 (1964); Annot., 88 A.L.R.3d 704, *Modern Status of the Massachusetts or Business Trust,* § 2, page 711 (1978).

The business trust, or common law trust, is also known as a "Massachusetts trust." It was a device used in Massachusetts to circumvent the then existing onerous Massachusetts' requirement that before a real estate developer could acquire and develop land. The developer had to first secure corporate charters which could only be acquired by a special act from the Massachusetts' legislature. In later years, the business trust was a popular device used by business organizations as a means of es-

---

5. G.L. § 2745, predecessor of 27 Vt.Stat.Ann. § 303.

6. 29 Car. II, Ch. 3, § 7, provides that all declarations or creations of trusts or confidences in any lands, tenements or hereditaments, "shall be manifested and proved, by some writing signed by the party who is by law to declare such trust, or by his last will in writing...."

7. The definition section of Vermont's version of the Uniform Commercial Code, 1962 version, states:

> (28) 'Organization' includes a corporation, government or governmental subdivision or agency, *business trust,* estate, trust, partnership or association, two or more persons having a joint or common interest, or any other legal or commercial entity.

9A Vt.Stat.Ann. § 1–201(28).

caping the burdens of their respective State's statutory corporation laws while securing the advantages of incorporation. Bogert, *The Law of Trusts and Trustees,* § 247, pages 150–151 (1977) (footnotes omitted); 13 AmJur2d, *Business Trusts,* § 2, page 376 (1964). Some States, including Massachusetts and New York, have enacted legislation regulating the business trust.

The *Restatement Second of Trust* excludes business trusts from its scope:

> *b. Matters excluded.* A Statement of the rules of law relating to the employment of a trust as a device for carrying on business is not within the scope of the Restatement of this Subject. Although many of the rules applicable to trusts are applied to business trust, yet many of the rules are not applied, and there are other rules which are applicable only to business trusts. The business trust is a special kind of business association and can be best dealt with in connection with other business associations.

*The Restatement of the Law,* Trust 2d, Section 1, comment b (1959). *Accord,* 12A C.J.S., *Business Trust,* § 3, pages 496–497 (1980).

In non-statutory States, the general consensus is that each business trust, as any contract at common law, must be treated *sui generis.* A business trust is not, strictly speaking, a "trust" in the sense of a private trust, rather, it is a hybrid of various forms of for-profit business organizations with characteristics gleaned from private trusts. *See e.g., Swartz v. Sher,* 344 Mass. 636, 184 N.E.2d 51 (1962); *State St. Trust Co. v. Hall,* 311 Mass. 299, 41 N.E.2d 30 (1942).

Some of the features of a business trust that distinguish it from a private trust and other forms of business organizations include:

> The most significant characteristic of the business trust, and the most important distinction between such trusts and ordinary trusts established by will or inter vivos, lies in the fact that the business trust is organized not as a means of effecting a gift or transfer but as a device for profit-making through the combination of capital contributed by a number of investors. In ordinary trusts the settlor is seldom also the sole or principal beneficiary; in business trusts the trust res consists of property originally contributed by the beneficiaries themselves.... [But] [n]ot every trust where a business constitutes part or all of the trust property is technically a business trust.

In such cases the fact that the trustees are conducting business and thus have dealings with outsiders does raise questions of liability, similar to those arising in typical business trust. Yet it is only when the trust is used by entrepreneurs as a means of organizing their business that there are questions as to whether certain statutes and common law rules relating to corporations or partnership are not applicable to trusts which fulfill a similar business function.

... Among the most common uses of the business trust device are platting, development, and sale of tracts of land and the construction and management of large office buildings.... An investment trust in which the trustee has discretionary powers in the management of the portfolio is very similar to the business trust where the only business is the management of real estate holdings. The investment trust, however, usually involves no problems as to relations with outsiders, except in connection with the purchase or sale of securities, and in the more recent practice the trustees are less frequently vested with discretionary powers. Such trusts, therefore, do not present the same problems as do other types of the business trust.

. . . . .

Also to be distinguished from the typical business trust are the frequent instances where the trust is used in connection with the partnership or joint stock company form of business organization, solely as a convenient device for the holding of property, especially real estate. Here the trustees have no discretionary powers but merely hold and convey the prop-

erty in accordance with the instructions of the authorized representatives of the organizations.

Bogert, *The Law of Trusts and Trustees*, § 247, pages 147–150 (1977) (footnotes omitted).

We find that a valid business trust was created by the Declaration of Trust at issue here because it substantially satisfies several essential common law business trust elements. We list some of those common law elements:

1) the instrument states an unequivocal manifestation of intent[8] to create a business trust;

2) the declaration of trust has a business purpose of acquiring, holding and selling real estate;

3) its trustee acquired legal title to real estate in his capacity as a trustee for the business trust;

4) the real estate is the capital of the business trust;

5) the Declaration of Trust limits the liability of its trustee; .

6) trustee has express powers and duties to the business trust and its beneficiaries; and,

7) beneficiaries are entitled to demand the issuance of certificates of shares to represent their beneficial interest in the trust.

*See e.g., Hecht v. Malley,* 265 U.S. 144, 146–147, 44 S.Ct. 462, 463, 68 L.Ed. 949, 953 (1924); *Morrissey v. Commissioner of Internal Revenue,* 296 U.S. 344, 357–360, 56 S.Ct. 289, 295–296, 80 L.Ed. 263, 270–272 (1935); 13 AmJur2d, *Business Trusts,* § 14, page 389 (1964).

■ Assuming there is a failure of its attack of the business trust for invalidity ab initio, Trustee claims the business trust is voidable because certificates or shares were not actually issued, and because it was not registered with the Commissioner of Banking and Insurance of Vermont.

We hold that neither ground supports a holding that this business trust is voidable.

The case *Limouze v. M.M. & P. Maritime Advancement, Training, Education and Safety Program,* 397 F.Supp. 784 (D.Md.1975), relied upon by Trustee is easily distinguishable from the proceeding sub judice. The Court in *Limouze* interpreted New York Statutory Law[9] to require the beneficial interest of business trusts be divided into shares represented by certificates and held the absence of the issuance of certificates was fatal to a finding of the existence of a business trust. *Id.,* 397 F.Supp. at 788–789.

In Vermont, however, there is no statutory requirement that shares or certificate of shareholder ownership be issued to be a valid business trust. Thus, *Limouze* is inapplicable.

Another case Trustee relied on is *Pope & Cottle Co. v. Fairbanks Realty Trust,* 124 F.2d 132 (1st Cir.1941). This case is distinguishable because, in addition to the absence of issuance of certificates, it found the declaration of trust was not in the usual form of a Massachusetts trust. This finding, among other findings, negated a finding of a business trust. The Trust at issue here is a common law business trust, not a statutorily regulated Massachusetts business trust.

Reflecting more on the case at hand is *Hardee v. Adams Oil Ass'n,* Tex.Civ.App., 254 S.W. 602 (1928). In *Hardee,* the Court held that one may be a beneficiary or shareholder under a business trust despite the absence of the issuance of certificates because the certificates were merely written evidence of ownership and were not necessary to perfect the actual existence of ownership. *Id.,* 254 S.W. at 604–605. *See,* 12A C.J.S., *Business Trust,* § 14, pages 507–508 (1980). The *Hardee* Court focused upon the contractual relationship between the shareholder and the other attributes of

---

**8.** We have more to say about Gabelharts' intent at page 766, *supra.*

**9.** Article I, § 2(2) of New York General Associations Law (McKinney 1937) provided:

The term 'business trust' means any association operating a business under a written in-strument or declaration of trust, **the beneficial interest under which is divided into shares represented by certificates.** (Emphasis supplied).

a business trust rather than the cumulative evidentiary effect of the written certificates.

We side with the principle at work in *Hardee* because the totality of the circumstances governed a determination of the existence of a common law business trust, and rule the business trust before us is not voidable for failure to issue *pro forma* certificates or shares. Moreover, the Declaration of Trust does not state that the business trust is voidable upon the failure to issue shares. There is no prohibition we are aware of that prevents the Gabelharts from demanding of the Trust's trustee the issuance of certificates under the Declaration of Trust. (Stipulation Exhibit #1). The evidence shows that the Gabelharts are shareholders despite the absence of the physical evidence of ownership of such shares by certificates, and thus, we so hold.

■ Trustee's argument that the failure to register the Declaration of Trust with the Commissioner of Banking and Insurance of Vermont suffers a similar fate. First, there is no Vermont statutory requirement that requires a business trust be registered with the Commissioner of Banking and Insurance. Additionally, Trustee failed to alert us of any internal rules, regulations, or customary practice of any Vermont State agency that requires a business trust be registered. Second, the terms of the Declaration of Trust do not require that it or any amendments be registered anywhere. (Stipulation Exhibit #1).

■ In the alternative, and assuming *arguendo* Trustee is correct that this business trust is voidable because of the absence of shares or certificates, we hold Trustee is still defeated because the business trust qualifies as a private trust under Vermont Law, and, as such, the trust property would be excluded from becoming property of Gabelharts' bankruptcy estate. *See, Associated Cemetery Management, Inc. v. Barnes,* 268 F.2d 97, 101–102 (8th Cir.1959) (held that the facts, along with the absence of the issuance of certificates,

required a determination that a business trust was actually a private trust, and, as such, an ineligible entity for filing of a petition in bankruptcy under the Bankruptcy Act).

■ Failing on the technical objections, Trustee shifts to a factual attack mode and argues the business trust fails because Ruth Gabelhart was not added as a trustee under the terms of the Declaration of Trust. Trustee also questions the true intentions of the settlor in the creation of the Declaration of Trust because Gabelharts treated the real property as their own property for Bankruptcy and Federal Internal Revenue Code purposes.

On the issue of Ruth Gabelhart's appointment as co-trustee of the Declaration of Trust, we find the facts to be contrary to James Gabelhart's testimony and the representation from the minutes because there never was a meeting of C & H Associates to appoint her as co-trustee. Assuming *arguendo* there was such a meeting, the correct procedure under the Declaration of Trust for adding a trustee was not followed. James Gabelhart failed to execute a "written instrument" and Ruth Gabelhart failed to execute a written acceptance of her purported appointment as trustee. (Stipulation Exhibit #1). Thus, we find Ruth Gabelhart was never a trustee of the Declaration of Trust.[10]

■ Our finding that Ruth Gabelhart is not a trustee, however, does not *ipso facto* require a determination that the business trust is voidable. Indeed, it proves nothing for the Trustee. Instead, the Trust has one trustee, James Gabelhart, an amount in number sufficient for this Trust. James Gabelhart holds the legal interest of the Trust in his capacity as trustee, and, as such, this interest cannot come into the bankruptcy estate because property of the estate does not include any power or interest James Gabelhart may exercise solely for the benefit of an entity other than himself as a bankruptcy debtor. 11 USC § 541(b)(1).

---

**10.** This finding renders moot the point that Ruth Gabelhart was not made a defendant in

this proceeding in her capacity as a co-trustee under the Declaration of Trust.

■ Our determination the Trust has one trustee vested with legal title and two beneficiaries with equitable shares in the Trust negates the theory that there was a merger between the Trust's legal and equitable title. In *Noyes v. Noyes*, 110 Vt. 511, 9 A.2d 123 (1939) the Vermont Supreme Court refused to apply the doctrine of merger because the two estates were not commensurate where the trustees held property as a joint estate and, as beneficiaries, also held the property by estate in common. *Noyes* stated the general rule:

'[w]here the legal and equitable estate in the same land becomes vested in the same person, the equitable will merge in the legal estate; for a man cannot be trustee for himself, nor hold the fee, which embraces the whole estate, and at the same time hold the several parts separate from the whole. But in order that this may be true, the two estates must be commensurate with each other; or the legal estate must be more extensive or comprehensive than the equitable. The equitable cannot merge in a partial or particular legal estate.'

*Id.*, 110 Vt. at 520–21, 9 A.2d 123 (1939) (*citing*, Perry on Trusts, 7th ed., § 347). The *Noyes* Court noted that "[t]his slight difference in the character of the legal and equitable interests may justify the refusal to apply merger except in the instance of a single person as sole trustee and *sole cestui.*" *Id.*, 110 Vt. at 521, 9 A.2d 123.

■ The fact that the Gabelharts treated the real property subject to the Trust as their own property for bankruptcy and internal revenue purposes is the most troubling fact presented by Trustee in favor of the Trust's voidability. It disturbs us because we question whether there was an intent to form a trust. There is some case holding that seems to say that if the certified holders are associated together in the control of the property as principals, and the trustees are merely managing their managing agents, a partnership relationship between certified holders is present. *Hecht v. Malley, supra*, 265 U.S. 144, 147, 44 S.Ct. 462, 463, 68 L.Ed. 949, 953 (1924). A finding of a partnership here would not change the result. We hold the failure of the Declaration of Trust to qualify as a REIT or to file its own Trust Federal Income Tax Returns is not relevant to the non-tax status of C & H Associates as a legal entity under Vermont Law. The fact Gabelharts treated the trust's real property on their personal income tax return was at worse a mistake based on bad advice. Accordingly, we pursue this avenue of thought no further.

■ Gabelharts left us dangling in uncertainty about their intent. With our inquiry about intent dead-ended, we turn to the only evidence before us—the Declaration of Trust. Thus, the true intention of the parties in the creation of this Trust is to be gleaned from the four corners of the Declaration of Trust. From it, the evidence is clear that there is an agreement by the settlor to be bound by trust principles in respect to real property to be acquired for business purposes. In addition, as we found earlier, the real property was taken by James Gabelhart in his capacity as trustee for C & H Associates.

■ We conclude the Declaration of Trust created a valid, nonvoidable business trust with one trustee and two beneficiaries. In the alternative, we hold the business trust qualifies as a private trust. James Gabelhart's legal interest as trustee does not come into the bankruptcy estate because he holds legal title solely on behalf of the business trust, C & H Associates, "an entity other than the debtor." 11 USC § 541(b)(1). Gabelharts' beneficial or equitable personal property interest in the business trust becomes part of their bankruptcy estate.

Counsel for Loux is to settle an Order.