**Frederick L. WEBB, Plaintiff, Appellant,**

v.

**INTERNAL REVENUE SERVICE of the UNITED STATES of America, Defendant, Appellee.**

No. 93–1684.

United States Court of Appeals, First Circuit.

Heard Nov. 1, 1993.

Decided Feb. 3, 1994.

---

Brendan J. Shea, with whom Joseph J. Brodigan and Langan, Dempsey & Brodigan, Boston, MA, were on brief, for appellant.

Teresa T. Milton, with whom Michael L. Paup, Acting Asst. Atty. Gen., Washington, DC, A. John Pappalardo, Acting U.S. Atty., Boston, MA, Gary R. Allen and David I. Pincus, Washington, DC, were on brief, for appellee.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

We must decide whether government loan proceeds embezzled with intent to repay are taxable in the year of the embezzlement.

## I.

Ronald and Sharon Pomella established River Realty Trust ("Trust"), a qualified Massachusetts business trust, as the entity which would operate the South River Marina in Scituate, Massachusetts. Under the trust agreement, Sharon was designated sole trustee and Ronald received title to all transferable Trust stock. In April 1978, Ronald sold his Trust stock to appellant Frederick L. Webb, who also became sole trustee. As sole trustee, Webb applied for a United States Small Business Administration (SBA) storm disaster loan, representing to SBA that the marina had sustained serious damage during the blizzard of February 1978. Under SBA loan eligibility rules, applicants must have owned (or contracted to buy) the property before the property damage occurred. Appellant Webb therefore backdated the marina purchase and sale agreement to January 3, 1978.

On July 15, 1978, SBA and the Trust executed a loan agreement and promissory note which provided that the Trust would use the loan proceeds ($376,900) to repair the marina ($196,900), to replace marina inventory ($2,000), and to amortize two outstanding Trust mortgages ($178,000). Webb signed the note as "*trustee*." [1] As a condition of the loan, Webb was required to submit receipts

---

1. The loan was personally guaranteed by Webb and one John McNamara.

evidencing payments for marina repairs. Instead, in September and October 1978 Webb diverted part of the SBA loan proceeds ($64,730) toward the purchase of a garage and inventory on a lot adjacent to the marina, and to acquire land for the Webb Cranberry Company, his personal business. The diverted funds were not reported on Webb's 1978 federal income tax return.

Webb was indicted by a federal grand jury on three counts of making false statements on an SBA loan application, 15 U.S.C. § 645 (1993), five counts of "embezzling" or "converting" United States government funds, 18 U.S.C. § 641 (1993), and two counts of obstructing justice, 18 U.S.C. §§ 1503, 1510 (1993). Webb pled guilty to one "false statement" count, relating to the backdated purchase and sale agreement, and to all five embezzlement counts, which encompassed the unauthorized diversion of the $64,730 to his personal use. Ultimately, the SBA called the loan, and Webb repaid the entire balance.

In 1986, the Internal Revenue Service (IRS) assessed a $37,369 deficiency against Webb for the tax year 1978, based in part on the unreported $64,730. After Webb paid the deficiency, he filed a timely claim for refund with the IRS, asserting that the $64,730 represented *bona fide* loan proceeds not includable in gross income. After the IRS rejected the refund claim, Webb brought the present action to recover a refund. *See* 26 U.S.C. § 7422(a). The district court granted summary judgment to IRS. The court concluded, in reliance on *James v. United States*, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961), that evidence of Webb's intent to repay the embezzled SBA loan proceeds was immaterial as a matter of law. *Webb v. Internal Revenue Serv.*, 823 F.Supp. 29, 31–33 (D.Mass.1993). We affirm.

## II.

■ We review the grant of summary judgment *de novo*, employing the same standards incumbent on the district court. "Summary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law.'" *Gaskell v. The Harvard Coop. Soc'y*, 3 F.3d 495, 497 (1st Cir. 1993) (quoting Fed.R.Civ.P. 56(c)); *Vanhaaren v. State Farm Mut. Auto. Ins. Co.*, 989 F.2d 1, 3 (1st Cir.1993). In a refund action under section 7422(a), the taxpayer must bear the burden of proving that the challenged IRS tax assessment was erroneous. *Lewis v. Reynolds*, 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293 (1932); *see Bonilla–Aviles v. Southmark San Juan, Inc.*, 992 F.2d 391, 393 (1st Cir.1993) (if nonmoving party bears ultimate burden of proof, he must present "definite" and "competent" evidence to survive summary judgment). Webb's principal protest is that the district court mistakenly concluded that it is immaterial whether he intended to repay the SBA loan.

## III.

■ The issue presented is centered at the confluence of two fundamental principles of federal tax law. On the one hand, *bona fide* loan proceeds are not gross income to the borrower, *see Commissioner v. Indianapolis Power & Light Co.*, 493 U.S. 203, 207–08, 110 S.Ct. 589, 592–93, 107 L.Ed.2d 591 (1990), because the contemporaneous economic benefit realized upon receipt of the loan proceeds is counterbalanced by the borrower's legal obligation to repay the loan. *See McSpadden v. Commissioner*, 50 T.C. 478, 491, 1968 WL 1490 (1968). The factual determination as to whether a particular transaction is a *bona fide* loan turns on whether there are sufficient indicia of the parties' intention that the monies advanced were to be repaid. *See Crowley v. Commissioner*, 962 F.2d 1077, 1079 (1st Cir.1992); *Moore v. United States*, 412 F.2d 974, 978 (5th Cir.1969). At the same time, a line of Supreme Court cases indicates that monies and other property acquired by misappropriation must be reported as income in the year of their receipt. *See James v. United States*, 366 U.S. 213, 221, 81 S.Ct. 1052, 1056, 6 L.Ed.2d 246 (1961) (embezzlement proceeds); *Rutkin v. United States*, 343 U.S. 130, 137–38, 72 S.Ct. 571, 575–76, 96 L.Ed. 833 (1952) (extortion proceeds).

The lot of the embezzler was not always so bleak. Rather, in *Commissioner v. Wilcox,* 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752 (1946), the Court held that embezzled monies were *not* income because the embezzler held the monies "without any semblance of a bona fide claim of right" and "under an unqualified duty and obligation to repay...." *Id.* at 408, 66 S.Ct. at 549. Later, however, in a closely analogous context, the Court held that extortion generates taxable earnings. *Rutkin,* 343 U.S. at 138–39, 72 S.Ct. at 575–77 (without explanation, limiting *Wilcox* "to its facts"). The *James* Court, confronting the seeming anomaly created by *Wilcox* and *Rutkin,* overruled *Wilcox* and flatly rejected the taxpayer's contention that "all unlawful gains [*e.g.,* extortion earnings] are taxable *except* those resulting from embezzlement...." *James,* 366 U.S. at 219, 81 S.Ct. at 1055 (emphasis added). The Court explicated its holding as follows:

> Whenever a taxpayer acquires earnings, lawfully or unlawfully, without *the consensual recognition,* express or implied, *of an obligation to repay* and without restriction as to their disposition, "he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." In such case, the taxpayer has "actual command over the property taxed—the actual benefit for which tax is paid...." This standard brings wrongful appropriations within the broad sweep of "gross income"; *it excludes loans.*

*Id.* at 219–20, 81 S.Ct. at 1055–56 (citations omitted) (emphasis added). Since *James,* the mere fact that an embezzler originally acquired lawful access to monies in a fiduciary capacity does not foreclose their taxation in the year of the embezzlement.

In a refund action under section 7422(a), therefore, *James* presumably requires that the taxpayer prove *either* (i) that he did not "acquire" earnings *or* (ii) that any such earnings were "acquired" in one of two ways: under a "consensual recognition of an obligation to repay" or subject to restrictions on their disposition. Since the *James* Court did not elaborate on the meaning of "consensual recognition," however, *see id.* at 221–22, 81 S.Ct. at 1056–57, some post-*James* case law suggests that a taxpayer who misappropriates monies, yet casts the transaction in the *form* of a "loan" obligation, may foreclose summary judgment by establishing a genuine issue as to his subjective intention to repay. *See, e.g., United States v. Rosenthal,* 470 F.2d 837, 841–42 (2d Cir.1972) (reviewing factual findings of intent to repay), *cert. denied,* 412 U.S. 909, 93 S.Ct. 2298, 36 L.Ed.2d 975 (1973).

### IV.

Webb's argument seems to be that the last three words in the above-quoted passage from *James* ("it excludes loans"), *see supra* at p. 206, required the district court to consider whether he had a *bona fide* intention to repay. Thus, Webb would characterize the events relevant to tax year 1978 as follows: although the Trust was the named borrower on the SBA note, Webb was the *de facto* borrower, and his signature on the note, whether as trustee or guarantor, betokens his continuing and binding obligation to repay SBA.[2] Therefore, he acquired the $376,-

---

2. The parties have generated considerable needless confusion concerning the nature and timing of the taxable event at issue in this case. In its appellate brief and at oral argument, IRS suggested that Webb may have embezzled the SBA loan funds at the time he submitted the false loan application and the backdated purchase agreement to SBA, since the SBA would not have approved the loan to the Trust "but for" those misrepresentations. In other words, Webb was not qualified for the loan, hence he never acquired lawful access to the loan proceeds.

We do not address this broader contention for three reasons. First, if the IRS's characteriza-

tion were correct, the entire loan proceeds of $376,900 would have been taxable to Webb, or at least the disbursements of $170,350 to the Trust and $178,000 to amortize the Trust mortgages. IRS has never asserted that these portions of the loan proceeds were taxable to Webb upon receipt. Second, the record is unclear whether Webb's false statement (*i.e.,* the backdating of the marina purchase-sale agreement) was "material" to SBA's decision to grant the Trust loan, nor is it clear that Webb's guilty plea under 15 U.S.C. § 645 would foreclose relitigation of this particular issue, *see, e.g., United States v. Carter,* 526 F.2d 1276, 1278 (5th Cir.1976) (*any* "false" statement), especially given the record evidence that

900 (including the $64,730) under a "consensual recognition of an obligation to repay," *James*, 366 U.S. at 219, 81 S.Ct. at 1055, and no taxable event occurred in July 1978. Moreover, no taxable event occurred in September–October 1978 because either (1) he did not "acquire" any loan funds in September–October 1978 (but merely applied funds he had *previously* acquired to a use not authorized under the SBA loan agreement),[3] or (2) if he first "acquired" the loan funds in September–October 1978, either from the Trust or the SBA, he nonetheless had a preexisting *contractual* obligation to repay the $376,000, which SBA could have enforced at any time.

## V.

The record belies Webb's expedient characterization of these events. Contrary to his implicit assumption, the record reflects that the Trust, *not Webb*, was the *borrower*, and therefore, absent evidence or developed argumentation to the contrary, *see Rhode Island Hosp. Trust Nat'l Bank v. Howard Communications Corp.*, 980 F.2d 823, 828 n. 8 (1st Cir.1992), we must treat the Trust as the separate juridical entity which "acquired" the entire loan proceeds ($376,900) in July 1978. *Cf. Moline Properties, Inc. v. Commissioner*, 319 U.S. 436, 439, 63 S.Ct. 1132, 1134, 87 L.Ed. 1499 (1943) (in tax cases, corporate form will not be disregarded to allow reassignment of corporate tax consequences to individual shareholder); *Burnet v. Commonwealth Improvement Co.*, 287 U.S. 415, 419, 53 S.Ct. 198, 199, 77 L.Ed. 399 (1932) (only in "unusual cases" will court disregard corporate form, and rarely where

that formality was previously wielded by taxpayer to reap tax benefits); *Town of Brookline v. Gorsuch*, 667 F.2d 215, 221 n. 4 (1st Cir.1982) ("It is almost black-letter law that for purposes of the Internal Revenue Code, distinctions between a corporation and its shareholders will be observed ... because the Code provides both benefits and burdens based explicitly on the existence of at least formally independent corporations....").[4] In September–October 1978, Webb breached his fiduciary duty and "acquired" the $64,730 *from the Trust* by applying it to his *personal* use. Under *James*, Webb's fiduciary duty as sole trustee, *see Terrydale Liquidating Trust v. Barness*, 642 F.Supp. 917, 919 (S.D.N.Y. 1986) (trustee of Massachusetts "business trust" acts under a fiduciary duty); *Loring v. United States*, 80 F.Supp. 781, 785 (D.Mass. 1948) (same), *standing alone*, would be inadequate, as a matter of law, to generate a trialworthy issue respecting his alleged intent to repay the Trust. Webb, who bears the ultimate burden of proof, failed to produce any evidence that the Trust formally loaned him the $64,730, or that the Trust, as the putative "lender" under the relevant *James* analysis, "consensually recogni[zed]" Webb's obligation to repay the funds to the Trust. *Cf. Crowley*, 962 F.2d at 1079 (listing indicia of nontaxable "loan" to shareholder, as distinguished from taxable "constructive dividend," including, *inter alia*, taxpayer's control over corporation, use of customary loan documents). Thus, Webb's alleged obligation to repay *SBA* is immaterial to the taxability of the September–October 1978 "acquisitions."[5] Regardless of the precise

Webb induced the SBA loan with the aid of unscrupulous SBA insiders. Finally, the five "embezzling" counts charge that Webb's unlawful "acquisition" of the loan funds occurred in *September–October 1978*, months after Webb's loan application and the ensuing loan approval.

3. The support for Webb's implicit assumptions is unclear. *See, e.g., United States v. Kristofic*, 847 F.2d 1295, 1296–97 (7th Cir.1988) (reversing § 641 "embezzlement" conviction of SBA borrower who subsequently used funds for unauthorized purposes; following their disbursement, SBA had "contract" rights, but no "property" rights); *see also United States v. Lawson*, 925 F.2d 1207, 1209–10 (9th Cir.1991) (auctioneer for SBA could not be convicted under § 641 for unauthorized use of sale proceeds).

4. Massachusetts business trusts apparently possess many essential attributes of corporations, *see* Mass.Gen.L. ch. 182, §§ 1–14 (1993); *Swartz v. Sher*, 344 Mass. 636, 639, 184 N.E.2d 51 (1962). Moreover, the appellate record contains evidence (a copy of the 1979 Trust corporate income tax return) suggesting that Webb has found it advantageous to treat the Trust as a discrete taxable entity. *See Burnet*, 287 U.S. at 419, 53 S.Ct. at 199.

5. Webb's potential liability as guarantor or trustee does not alter the essential fact that the Trust was the SBA borrower to which the loan proceeds were disbursed.

reach of the *James* "consensual recognition" test, therefore, Webb failed to demonstrate a genuine issue of material fact with respect to his intention to repay the $64,730 embezzled from the Trust.[6]

*Affirmed.*

---

**6.** Moreover, by his guilty plea Webb is collaterally estopped from claiming that *he* personally "acquired" the $376,900 (including the $64,730) prior to September–October 1978. *See* 1B James W. Moore, Jo D. Lucas, Thomas S. Currier, *Moore's Federal Practice* ¶ 0.418[1], at 557 (2d ed. 1992) (guilty pleas are conclusive against defendant in subsequent civil suit as to all facts necessarily "decided" as predicate for criminal conviction); *Fontneau v. United States*, 654 F.2d 8, 10 (1st Cir.1981) ("Relitigation of such issues [in a civil tax proceeding] ... 'simply because the [ ] court's decision [to accept the guilty plea] may have been erroneous' is not ... allowed.") (quoting *Allen v. McCurry*, 449 U.S. 90, 101, 101 S.Ct.

411, 418, 66 L.Ed.2d 308 (1980) ). In order to have been convicted of "embezzling" $64,730 in September–October 1978, as alleged in the indictment, *see supra* note 2, Webb would have had to "acquire" monies of a third party *at that time*, either directly from the SBA, or from the Trust. *See United States v. Lawson*, 925 F.2d 1207, 1209 (9th Cir.1991) (an essential element under 18 U.S.C. § 641 is misappropriation of property of the United States ("money ... or thing of value of the United States") ). One cannot embezzle from oneself. Thus, Webb effectively conceded that he "acquired" the $64,730 in September–October 1978, *at the earliest*.