USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-2048 No. 94-1142 BRENDAN MCGUINNESS, Plaintiff, Appellant, v. LARRY E. DUBOIS, ET AL., Defendants, Appellees. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Boudin and Stahl, Circuit Judges. ______________ ____________________ Brendan M. McGuinness on brief pro se. _____________________ Nancy Ankers White, Special Assistant Attorney General, and ____________________ Rosemary Ford, on briefs for appellees. _____________ ____________________ May 11, 1994 ____________________ Per Curiam. The plaintiff, Brendan McGuinness, an ___________ inmate at the Massachusetts Correctional Institution at Cedar Junction, filed a complaint, pursuant to 42 U.S.C. 1983, against eight prison administrators and officers. McGuinness has appealed a district court order granting summary judgment in favor of the defendants and denying his request for a preliminary injunction. We affirm.1 I. We review the grant of summary judgment de novo, employing the same standards as is required of the district court, Webb v. Internal Revenue Serv., 15 F.3d 203, 205 (1st ____ ______________________ Cir. 1994), and mindful of our duty to review the record in the light most favorable to the nonmoving party, Shinberg v. ________ Bruk, 875 F.2d 973, 974 (1st Cir. 1989). ____ A motion for summary judgment must be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position. Having done so, the burden shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the opponent. It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, ____________________ 1. Our affirmance of the grant of summary judgment necessarily is an affirmance of the denial of the preliminary injunction request. We, therefore, do not address separately the preliminary injunction issue. -2- provable facts demonstrating that there is a triable issue. There must be sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990) (internal ______ ____ quotations and citations omitted). II. In February 1992, McGuinness admitted to attempting to flush his sweatshirt down the toilet in his cell. He was found guilty of three disciplinary offenses2 with respect to this incident. McGuinness' institutional folder was then reviewed. He had had 44 disciplinary reports in two years, including six assaults on staff, four violations for possession of a weapon, and two drug-related offenses. At the time of the flushing incident, McGuinness was in the prison's Departmental Segregation Unit (DSU) for assaulting a staff member. After reciting this, the hearing officer stated: [t]his inmate exhibits assaultive along with disruptive behavior both in general population and segregation. The conduct that the inmate has displayed makes him a viable candidate for DDU. This type of ____________________ 2. 103 CMR 430.24(3): Failure to keep one's person or one's quarters in accordance with institutional rules; 103 CMR 430.24(8): Conduct which disrupts or interferes with the security or orderly running of the institution; 103 CMR 430.24(22): Willfully destroying or damaging state property or the property of another person. -3- defiant behavior, along with total disregard for the rules and regulations of the institution is unacceptable and will not be tolerated. Supplementary Record Appendix, No. 94-1142, ("SRA") at p. 20. McGuinness was given a sanction of six months in the prison's Departmental Disciplinary Unit (DDU).3 According to the affidavit of defendant Larry E. DuBois, the Commissioner of the Massachusetts Department of Corrections (DOC), the DDU has a maximum capacity of 121 inmates and is reserved for violent inmates and/or those with severe disciplinary problems. SRA at pp. 116-19. A. McGuinness filed a 1983 action against several prison officials claiming that conditions in the DDU violated provisions which grew out of state court litigation, Hoffer ______ v. Fair, Supreme Judicial Court, No. 85-71. Hoffer was a ____ ______ class action challenging regulations pertaining to, and conditions in, the prison's DSU. As we understand it, the DSU is for administrative segregation and an inmate typically is housed in the DSU because he is believed to pose a threat ____________________ 3. According to the defendants, McGuinness served his six month DDU sentence for the flushing incident from May to November 1992. He was released from the unit, but upon being found guilty of an assault, he received a second six month term in the DDU and began serving this term in February 1993. Presently, according to the defendants, McGuinness is serving yet a third six month period in the DDU, as a result of another assault. SRA at p. 128; Defendants' brief, Appeal No. 94-1142, at p.2 n.1. -4- to security.4 When that threat has dissipated, an inmate ought to be released back into the general prison population. The result of the Hoffer litigation was promulgation of ______ revised regulations, including those pertaining to the review and release of an inmate after DSU placement. The revised regulations provide for periodic hearings to review an inmate's DSU classification and written guidance to an inmate regarding what he might do to shorten his DSU term. See 103 ___ CMR 421.15(2)(c); 103 CMR 421.19(2)(a) (effective 12/15/89). The revised regulations also provide for an expanded range of activities and privileges than previously permitted to DSU inmates, such as access to educational and rehabilitative programs. 103 CMR 421.21 (effective 12/15/89). While the Hoffer litigation was pending in the state ______ court, Commissioner DuBois instituted the DDU as a new unit ____________________ 4. An inmate may be placed or retained in a DSU only after a finding by the Commissioner based on substantial evidence that, if confined in the general population of any state correctional facility: (1) The inmate poses a substantial threat to the safety of others; or (2) The inmate poses a substantial threat of damaging or destroying property; or (3) The inmate poses a substantial threat to the operation of a state correctional facility. 103 CMR 421.09 (effective 12/15/89). -5- for disciplinary segregation.5 A sentence to a period of confinement in the DDU is not subject to periodic review. Inmates in the DDU are not provided access to educational programs. McGuinness' 1983 suit charges that the new DDU unit is merely the pre-Hoffer DSU by another name. He ______ claimed that the improvements in the conditions and programs in the DSU brought about through the Hoffer litigation, in ______ particular, periodic classification review and access to rehabilitative programs, are applicable to the DDU and that the defendants have failed to provide him with those. Like the district court, however, we conclude that summary judgment in favor of the defendants is warranted on this claim. The record is clear that the DSU, which was the subject of the Hoffer litigation, and the DDU are separate ______ units, used for distinct purposes. Apart from Commissioner DuBois' affidavit, the defendants submitted a copy of an April 1992 court order in the Hoffer litigation, in which the ______ state court declined to enjoin the Commissioner from operating the DDU. It is true that the denial of the injunction was without prejudice, in the event that the Hoffer plaintiffs could further develop their factual claim ______ regarding the relationship between the DDU and the DSU. SRA ____________________ 5. According to DuBois' affidavit, he directed that the Department's regulations be amended on an emergency basis so as to deal with what he viewed to be an emergency situation. The amended regulations with respect to disciplinary segregation went into effect on January 22, 1992. -6- at pp. 122-23. McGuinness has presented nothing, however, indicating that the Hoffer plaintiffs subsequently have been ______ successful in this claim. Moreover, McGuinness has not suggested why it is unlawful, per se, to treat an inmate in administrative segregation differently from an inmate in disciplinary segregation. We need not, and therefore do not purport to, determine whether the conditions in the DDU comply with the Federal Constitution, but we note that the reasons provided by the defendants for the distinct treatment appear reasonably related to a legitimate penological interest. See ___ Turner v. Safley, 482 U.S. 78, 89 (1987) (announcing the ______ ______ standard for determining the validity of prison regulations which impinge on inmates' constitutional rights). A DDU term punishes "the most dangerous and repetitive kind of conduct," while the "DSU remains a place to house and control inmates who pose a danger to themselves or to others but for one reason or another may not be amenable to punishment and for whom the DDU would serve no penological purpose." DuBois affidavit at p. 4. Because, presumably, an inmate in administrative segregation may be entitled to release from that type of segregation when the reasons for its implementation, for example, a threat to security, have dissipated and his behavior in the DSU warrants his release to the general -7- population, it is reasonable to require that a DSU inmate have the possibility of obtaining, and the means to obtain, that release through periodic classification review hearing and access to rehabilitative programs. By contrast, a DDU inmate is being sanctioned for violent or severe disciplinary problems by a fixed period of a more severe level of incarceration. As there is no entitlement to early release from the DDU, there would appear no need for the periodic classification review hearing nor have we been pointed to authority for the proposition that prison officials may not sanction an inmate by withdrawing educational programs during his placement in higher security. We further remark that the Hoffer court, itself, in ______ addressing the conditions in administrative segregation, noted "the necessity of distinctions from the treatment of those confined for disciplinary violations and those confined solely for administrative reasons." Hoffer v. Fair, Supreme ______ ____ Judicial Court, No. 85-71, Memorandum, Order and Judgment #17 (Sept. 19, 1989), SRA at p. 76. Suffice it to say that summary judgment for the defendants was warranted on McGuinness' claim that conditions in the DDU violated the state court's rulings in the Hoffer litigation. ______ B. McGuinness' second contention is that his access to the law library or its materials, while confined to the DDU, -8- fails to comply with a "stipulation of dismissal" entered into in the Massachusetts federal district court case of Cepulonis v. Fair, No. 78-3233-Z. The parties in Cepulonis _________ ____ _________ stipulated that the DOC would maintain a satellite law library in the DSU with a designated list of particular lawbooks. The stipulation also contained provisions for requesting access to the satellite library, access to the main prison library or to material available there but not in the satellite library, and provisions regarding library hours. The short answer is that the Cepulonis suit was a _________ class action concerning law library access of inmates housed in the DSU. It did not speak to the DDU which, we recognize, ___ had not yet been created. But, by the same token, an alleged failure to comply with the stipulation in Cepulonis (which _________ addresses the DSU) may be a questionable thread on which to hang a claim regarding the contours of the entitlement of the law library access in the DDU. The record indicates that an inmate in the DDU is permitted a minimum of two hours access per week to a book cart with a selection of starter volumes6; may request from ____________________ 6. According to the affidavit of defendant Ronald T. Duval, the Superintendent of MCI Cedar Junction, these include the Federal Rules of Criminal Procedure, the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the District of Massachusetts, the Federal Practice Digest on Prisons, Constitutional Law, and Criminal Law, the Massachusetts Rules of Court, the Massachusetts Practice volumes on Criminal Practice and Procedure and Criminal Law, Massachusetts Criminal Law and Procedure, Cohen, How to Find ___________ -9- the prison's law librarian any legal materials, up to six items at one time, including legal research material in the prison's main law library which is not available in the DDU, which the inmate identifies, either by name or general topic; and may retain loaned legal material in his cell provided that it does not exceed the one cubic foot maximum level.7 We do not purport to resolve here (because it is not squarely presented) whether these provisions for law library access while in the DDU suffice to meet any constitutional threshold for access to the courts.8 We conclude only that the defendants were entitled to summary judgment on McGuinness' claim that the provisions for law library access, while in the DDU, violate the stipulation entered into in the Cepulonis case regarding the DSU. _________ ____________________ the Law, Gobert and Cohen, Rights of Prisoners, and Black's _______ ___________________ Law Dictionary. SRA at p. 127. 7. According to Duval's affidavit, DDU inmates also have the opportunity to retain and consult with outside, licensed counsel, both in person and by telephone. 8. To succeed on a claim of denial of a constitutional right of access to courts, a prisoner may be required to show an "actual injury" to his ability to participate meaningfully in the legal process, unless the deprivation is so significant as to constitute an injury in and of itself. Sowell v. Vose, ______ ____ 941 F.2d 32, 34-35 (1st Cir. 1991) (per curiam). A challenge to the basic adequacy of available materials may typify a classic allegation of inherent prejudice, but not every restriction on access to a prison law library is an inherently injurious act. Id. at 34. ___ -10- C. McGuinness' third claim was that 103 CMR 430.25(3)(d)9 which authorizes, as a disciplinary sanction, a sentence to the DDU for a period of up to ten years impermissibly conflicts with Mass. Gen. L. ch. 127, 40. That statute reads: For the enforcement of discipline, an inmate in any correctional institution of the commonwealth may, at the discretion of its superintendent, be confined, for a period not to exceed fifteen days for any one offence, to an isolation unit. Such isolation units must provide light, ventilation and adequate sanitary facilities, may contain a minimum of furniture, and shall provide at least one full meal daily. ____________________ 9. The applicable regulations regarding disciplinary proceedings authorize the following sanctions for "major" matters: (a) Isolation, for a specified period of time not to exceed 15 days for one offense, and no more than 30 days for all violations arising out of one incident. (b) Recommended good time forfeiture. (c) All minor sanctions. (d) Sentence to a Department Disciplinary Unit for a period not exceeding 10 years. An inmate shall be credited for time served on a monthly basis except when an inmate fails to attend his monthly review or is found guilty of a disciplinary offense. 103 CMR 430.25(3) (4/10/92). -11- McGuinness' contention is that a sentence to the DDU is a sentence to an isolation unit. The statute does not define an isolation unit beyond one which must provide "light, ventilation and adequate sanitary facilities, may contain a minimum of furniture, and shall provide at least one full meal daily." Mass. Gen. L. ch. 127, 40. The prison regulations do not further define an isolation unit. The record, however, evidences that the two are not the same. The disciplinary proceeding regulations, themselves, treat the two as distinct. The authorized sanctions for commission of a disciplinary offense designated as a "major" matter include isolation and/or a sentence to the DDU. See ___ -12- supra note 9.10 According to defendant Michael T. Maloney, _____ Deputy Commissioner of the Massachusetts DOC: The conditions in the DDU are not as severe as those that prevail in an "isolation unit" in the Massachusetts Department of Correction. An inmate in isolation is never allowed a television or radio. For fifteen days at a time, he is deprived of all out-of-cell activity and deprived of all outside contact or stimulus with the exception of a Bible or other holy book. By contrast, DDU inmates can communicate with other inmates one hour per day, five hours per week during their exercise periods. Pending good behavior, they can have telephone calls, visits and a television and radio. SRA at pp. 124-25; see also SRA at p. 37. ________ McGuinness counters by arguing that, at the very least, the conditions imposed for the first 30 days of a DDU term violate Mass. Gen. L. ch. 127, 40, which limits confinement ____________________ 10. Those regulations further provide: The Superintendent shall designate such person or persons as he deems appropriate to review the status of inmates housed in isolation on a weekly basis. No inmate shall be retained in isolation continuously for more than 15 days for any one violation. No more than 30 days isolation shall be imposed on an inmate for all violations arising out of the same or substantially connected incident(s), unless specifically authorized by the Commissioner. No inmate shall, at any given time, be facing more than 30 days of closed solid door isolation time, unless specifically authorized by the Commissioner. 103 CMR 430.22(2) (4/10/92). -13- to an isolation unit to "fifteen days for any one offence."11 According to the DDU Orientation Manual, SRA at pp. 28-40, for the first 30 days in the DDU, an inmate is not allowed a radio, visitors, or access to a telephone. These privileges may be earned after an inmate has completed 30 days free of disciplinary sanctions. SRA at p. 33. After 60 consecutive days of "disciplinary report free behavior," a DDU inmate is permitted a television and additional visiting and telephone periods. SRA at. 33-34. If, however, an inmate engages in conduct resulting in disciplinary ____________________ 11. Caselaw tells us that [b]y order of the [DOC] Commissioner, no more than thirty days of isolation may be imposed as a result of a single incident regardless of how many separate offenses were involved. [We note, for example, that, with respect to the "flushing" incident, McGuinness was found guilty of three separate prison offenses. See ___ supra note 2.] Also by order of the Commissioner, at no time shall any inmate be facing accumulated isolation sanctions of more than thirty days even when numerous infractions have been committed. If two fifteen-day isolation sanctions are to be served, the inmate is removed from isolation for twenty-four hours between the two periods. During this twenty-four-hour break the solid door is left open and the inmate is accorded the privileges enjoyed by inmates not serving isolation time, including visits and exercise. Libby v. Commissioner of Correction, 385 Mass. 421, 425 _____ ___________________________ (1982). -14- sanctions, he loses privileges and a new 30 day adjustment period is begun. SRA at p. 33. Although these conditions may be "isolating," we do not think the record supports the conclusion that the first 30 days of a DDU confinement is a confinement to an "isolation" unit in violation of Mass. Gen. L. ch. 127, 40. A DDU inmate, even during the initial 30 days of his DDU confinement, has a one hour per day, five days per week, out- of-cell exercise period during which he can communicate with other inmates. SRA at p. 37; pp. 124-25. In contrast to an inmate in an isolation unit, who is deprived of reading material except for a Bible or other holy book, a DDU inmate is permitted four personal or library paperback books, newspapers or magazines in any combination. Two books may be borrowed from the library cart at any one time. SRA at p. 37. A DDU inmate is permitted access to the "DDU [Legal] Research Area," whereas an inmate in isolation "will not normally be allowed Research Area access." SRA at p. 38-40. The district court did not err in granting summary judgment to the defendants on McGuinness' claim that a sentence to the DDU is a sentence to an isolation unit. III. The order of the district court granting summary judgment in favor of the defendants is affirmed. _________ -15-