**In re Terri L. STEFFEN, Debtor.**

No. 01–09988–8P1.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 31, 2005.

Herbert R. Donica, P. A., Harley E. Riedel, II, Stichter, Riedel, Blain & Prosser, Tampa, FL, for Debtor.

*ORDER ON DEBTOR'S SECTION 1341 REFUND CLAIM*

ALEXANDER L. PASKAY,
Bankruptcy Judge.

THE MATTER under consideration in the above Chapter 11 case is a claim for a tax refund under Section 1341 of the Internal Revenue Code filed by Terri L. Steffen (the "Debtor"). By virtue of 11 U.S.C. Section 505(a)(2)(B)(i), this Court has the jurisdiction to rule on the Debtor's eligibility to claim a tax refund under 26 U.S.C. § 1341.

The Debtor contends that she is entitled to a refund from the United States De-

partment of Justice Tax Department (the "United States") for taxes paid on money, which she claims was transferred to the United States to settle a judgment against her husband, Paul A. Bilzerian ("Bilzerian"). The facts of this case are as follows.

The Debtor and Bilzerian have been residents of the State of Florida since 1978. In 1985, Bilzerian's partnership bought and sold stock in Cluett, Peabody, & Company ("Cluett"). In 1986, Bilzerian's partnership bought and sold stock in Hammermill Paper Company ("Hammermill"). For the years of 1985 and 1986, the Debtor and Bilzerian filed joint tax returns, which reflected ordinary income from the gains on these stock transactions. In 1989, Bilzerian was convicted of securities fraud in the United States District Court for the Southern District of New York in connection with the purchase and sale of the Cluett and Hammermill stock.

Following the conviction of Bilzerian, the Securities and Exchange Commission ("SEC") initiated a disgorgement action against him. In January of 1993, the United States District Court for the District of Columbia (the "District Court") entered an Order requiring Bilzerian to disgorge $33,140,787.07 in profits from the securities fraud.[1] In June of 1993, the District Court entered another Disgorgement Order of $29,196,812.46 in prejudgment interest.[2] On or about December 29, 1995, the Debtor and Bilzerian created a trust in which they placed their interests in numerous entities, bank accounts, and their home

located at 16229 Villareal de Avila, Tampa, Florida 33613.[3]

On December 22, 2000, the District Court granted the SEC's Motion to Appoint a Receiver (Receiver) to take control of Bilzerian's assets.[4] On or about March 1, 2001, the District Court granted the Receiver's Motion for a temporary freeze of bank accounts with Wells Fargo Bank that were under the control of a trust created by the Debtor and Bilzerian.[5] On or about May 11, 2001, the District Court granted another Motion by the Receiver for a temporary freeze on other assets including the Debtor and Bilzerian's interests in various business entities and trusts which owned the Avila house in which the Debtor and Bilzerian currently reside.[6]

On May 29, 2001, the Debtor filed a voluntary petition under Chapter 11. In January 2002, the District Court entered a Consent Judgment ("Consent Order") resolving disputes between the Debtor, her entities, the SEC and the Receiver.[7] Under the Consent Order, the Debtor voluntarily agreed to grant to the Receiver, among other things, a fifty (50) percent interest in the Debtor and Bilzerian's house, a judicial lien on the property to the extent of that interest, and fifty (50) percent of the funds from the Wells Fargo accounts.[8] In exchange, the Debtor was allowed to keep fifty (50) percent of those interests, was given releases from liability from the partnerships in which she was involved and her assets were unfrozen.[9]

On November 4, 2001, the Internal Revenue Service (the IRS) filed a Proof of

---

1. Debtor's Exhibit 31

2. Joint Pretrial Statements on Debtor's Section 1341 Tax Refund Claim, Docket No. 363.

3. Government's Exhibit 36, page 6.

4. Government's Exhibit 12

5. Debtor's Exhibit 34

6. Debtor's Exhibit 37

7. Debtor's Exhibit 42

8. *Id.*

9. *Id.*

Claim (Claim No. 3) with this Court in the amount of $5,856,992.75. On February 6, 2002, the Debtor filed an Objection to the Claim Filed by the Internal Revenue Service (Doc. No. 40). In the Objection, the Debtor contended that she was entitled to a refund under 26 U.S.C. § 1341 that would either reduce or completely eliminate the IRS's claim. On or about April 17, 2002, the IRS filed an Amended Proof of Claim (Claim No. 6) in the reduced amount of $5,856,721.11. Subsequently, by Order of this Court (Doc. No. 80), the Objection to Claim No. 3 was sustained and the Claim was disallowed in its entirety. The Order further indicated that the Debtor's objection shall stand over the IRS's Amended Proof of Claim (Claim No. 6).

 The Debtor's claim is based wholly on her contention that she is entitled to a refund of the monies paid by her in the tax year of 1985. The right of a taxpayer to obtain a refund is governed by Section 1341 of the Internal Revenue Code. Section 1341 operates to provide taxpayer with a refund if:

(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer *had an unrestricted right* to such item;

(2) a deduction is allowable for the taxable year (i.e. the year of repayment) because it was disclosed after the close of such prior taxable year (or years) that the taxpayer *did not have an unrestricted right* to such item or to a portion of such item; and

(3) the amount of such deduction exceeds $3000.00 . . . .

*Perez v. United States*, 553 F.Supp. 558, 559 (M.D.Fla.1982) (alternation in origi-

nal). It has been well established through case law that the debtor has the burden of proving the evidence that supports his or her claim to the refund. *See In re Aboody*, 250 B.R. 1, 4 (Bkrtcy.D.Mass. 2000) *See also United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *United States v. Anderson*, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926); *Webb v. I.R.S.*, 15 F.3d 203 (1st Cir.1994).

Section 1341 requires there be an appearance that the taxpayer had an unrestricted right to the item in question *and* that a deduction is allowed for *that* item if it was later established that the taxpayer did not have an unrestricted right to such item. The Debtor argues that the transfers to the Receiver were on account of the Hammermill and Cluett transactions to which she had an appearance of an unrestricted right in 1985 and 1986.[10] The IRS argues that Bilzerian was "obligated to restore the income based on a subsequent event unrelated to the circumstances, terms, and conditions" under which the income was originally earned.[11]

The case of *Kraft v. United States*, 991 F.2d 292 (6th Cir.1993), is factually similar to the instant case. Kraft was a doctor who submitted false claims to his insurance provider. This resulted in the insurance company overpaying the amount of its reimbursement to Kraft for said tax year. Pursuant to a plea agreement Kraft reimbursed the insurance company and claimed a Section 1341 deduction. The Court held that the "obligation to pay the money must arise from the same circumstances, terms and conditions of the transaction whereby the amount was included in

---

10. Debtor's Post–Trial Memorandum of Law in Support of Section 1341 Refund Claim, Docket No. 372, page 32.

11. Post Trial Brief by United States on Debtor's Section 1341 Refund Claim, Docket No. 373, Page 36.

income"[12] and that the money paid based on the plea agreement the salary that he had included as income did not result from the same circumstances.

Similarly in *Bailey v. Commissioner of Internal Revenue*, 756 F.2d 44 (6th Cir. 1985), Bailey was obligated to pay $1,036,000 as judgment in a suit brought by the FTC to recover certain penalties. Bailey argued that this amount arose from his original receipt of salary and dividend payments in an earlier tax year. The 6th Circuit held that the amount of the penalty bore no relationship to the previous amounts. *See also Dominion Resources Inc., v. U.S.* 219 F.3d 359 (4th Cir.2000).

■ In the instant Chapter 11 case, the payment of taxes in 1985 and 1986 arose out of the purchase and sale of the Cluett and Hammermill stock. Subsequently, the Debtor settled with the SEC in January 2002, transferring over certain properties to the SEC receiver, the value of which Debtor now seeks a refund on. The monies transferred were pursuant to the 1993 Disgorgement Order against Bilzerian, *not* pursuant to the Cluett and Hammermill transactions on which Debtor and Bilzerian originally paid taxes in 1985 and 1986. The obligation of Bilzerian to the SEC did not arise out of similar circumstances to Bilzerian's inclusion of his stock gains as income. Thus, the nexus between the transactions, which is required by law, does not exist.

■ In addition to the lack of required nexus, the Debtor has submitted no evidence to support her claims that the property transferred was hers. Though the Debtor contends otherwise, the District Court held, in its Orders for freezes on Bilzerian's assets, that Bilzerian had an interest in the trusts, business entities and the real property located at 16229 Villareal

de Avila, Tampa, Florida, 33613. The fact that the Debtor retained a fifty (50) percent interest in the Wells Fargo accounts and fifty (50) percent interest in the real property suggests that the transfers the Debtor made to the SEC or the Receiver were of Bilzerian's interests in the property, not any of her own. Thus, the Debtor has not met her burden of proving that she is entitled to a Section 1341 refund.

Accordingly, it is

ORDERED, ADJUDGED, and DECREED that the Refund Claim under Section 1341 of the Internal Revenue Code filed by Terri Steffen be, and the same is hereby, denied.